RICHARD LALEH and THE GECKO KING INC.,
*Plaintiff*,

v.

MARIA AMEEN, a/k/a Leanne Miller,

*Defendant*.

Case No:

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiffs Richard Laleh ("Laleh") and The Gecko King Inc., (collectively with Laleh, "Plaintiffs"), by and through their attorneys Lewis & Lin LLC, for their Complaint against Defendant Maria Ameen a/k/a Leanne Miller ("Defendant"), respectfully show allege as follows:

**STATEMENT OF THE CASE**

1.      Plaintiffs bring this action pursuant to the Federal Lanham Act and for common law claims of libel, intentional infliction of emotional distress and harassment. The claims alleged herein arise from a sustained campaign by Defendant of tortious interference and online harassment, culminating—at least for now—in the malicious, willful and unlawful publication by Defendant of false and outrageous statements defaming Plaintiffs, statements received and viewed in this jurisdiction.

2.      Laleh is a well-known reptile breeder who has built up his business, which he operates alone, and professional reputation through hard work over the course of approximately ten years in the specialized industry of reptile breeding.

3.      On or around April 19, 2022, Defendant, using an alias, sent a mass email (the "False Mass Email") to multiple email addresses, (Support The Show Me Snakes Team <support@showmesnakes.com>; Show Me Snakes <tammick@showmesnakes.com>; Bruce

1

Lowder <bruce@reptileexpo.com>; Repticon Bookings <bookings@repticon.com>) and a presently-unknown number of emails hidden through the "BCC" or blind carbon copy designation, falsely claiming that Laleh was a child-molester and had had "multiple inappropriate encounters" with who Defendant falsely claimed was her nine year old daughter. This claim by Defendant was patently false in its entirety because, among other things, upon information and belief Defendant does not have a nine-year old daughter. Most importantly, Laleh has never molested or abused anyone. The False Mass Email was sent to business colleagues and/or associates of Plaintiffs in a deliberate attempt to harm their business reputation and standing in the professional community.

4. Defendant's defamatory statements included heinous, false accusations of pedophilia on the part of Laleh. To give supposed credibility to the otherwise incredible statements Defendant made, Defendant claimed there was a criminal investigation and a second minor involved. Later, Defendant also falsely claimed to be Laleh's former girlfriend.

5. Upon information and belief, Defendant's false and defamatory statements were viewed and are being viewed by and/or circulated among hundreds of individuals, including individuals within Plaintiffs' niche professional community of reptile breeders. Furthermore, upon information and belief, the False Mass Email was designed to damage Laleh's hard-earned reputation as a distinguished reptile breeder and his capacity as the owner of The Gecko King Inc., all while Defendant promoted her own, competing gecko business. Additionally, the False Mass Email, upon information and belief, was designed for the same reason as Defendant's competing business: to harass Laleh and his business and force him to stay in contact with Defendant, despite his clear intent to end any past association between them.

6. Defendant's false accusations threaten to destroy Plaintiffs' hard-earned

reputation and Laleh's livelihood. As a result of Defendant's misconduct, Plaintiffs have been, are being, and will continue to be substantially and irreparably harmed.

7. Moreover, as alleged more fully below, the False Mass Email is just the most egregious act in an overall pattern of harassment by Defendant, the full extent of which Defendant has attempted to obfuscate through, *inter alia*, the use of aliases.

## PARTIES

8. Plaintiff Richard Laleh is an individual domiciled in the State of New York, County of Kings.

9. Plaintiff The Gecko King Inc. is a domestic business corporation organized and existing under the laws of the State of New York with its principal place of business in the State of New York, County of Kings.

10. Upon information and belief, Defendant Maria Ameen is an individual domiciled in the State of New York, County of Kings.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*. and the laws of the State of New York. This Court has subject matter jurisdiction, *inter alia*, pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 *et seq*.

12. This Court has pendent jurisdiction of the related state law claims asserted in this action pursuant to 28 U.S.C. § 1367 because they involve the same parties, they arise from the same operative facts common to the causes of action arising under the federal claims, and because the exercise of pendent jurisdiction serves the interests of judicial economy, convenience and fairness to the parties.

## BACKGROUND COMMON TO ALL CLAIMS

### Plaintiffs' Background

13.     Laleh has been in the niche world of reptile breeding for over ten years, since early 2010. In April 2011, Laleh began operating his solo business under the name, The Gecko King Inc. Plaintiffs now specialize in the breeding of geckos. At any given time, Plaintiffs may be in possession of about 800 animals of over 70 different varieties. The linchpin of the business is the breeding of high-end species of geckos for both sale and trade.

14.     Laleh's business grew substantially in the early months of 2020, at which time Laleh made The Gecko King Inc. business his full-time occupation. He successfully registered The Gecko King Inc. as a corporation in New York on April 16, 2021. Plaintiffs promote the business through three main avenues—social media, online sales, and reptile trade shows.

15.     Plaintiffs maintain an online store, an Instagram account and a Facebook page to facilitate online sales and publicize their business. As of the date this Complaint, The Gecko King Inc. Instagram account has over 5,185 followers while the Facebook page has 1,376 followers.

16.     Plaintiffs participate in reptile trade shows based in Northeast America at least once a month. At each show, Plaintiffs purchase a booth to display animals for trade, sale, and educational purposes. Each show brings more than 1,000 interested visitors together to engage in the sale, trade, and display of high-end reptiles. Notably, these trade shows bring together the close-knit reptile community Laleh has worked with since the birth of his business.

17.     The ability to participate in these reptile trade shows is a critical part of Plaintiffs' financial success because, *inter alia*, the trade shows bring together those individuals interested in reptiles and reptile breeding. Plaintiffs also gain traction to the company's social media

accounts and online sales via the interested buyers at each trade show. Accordingly, the majority of Plaintiffs' sales are derived from these shows, but the conduct complained of herein by Defendant has improperly interfered with Plaintiffs' ability to participate in these shows.

**The Close-Knit Reptile Community**

18.　　The reptile community of which Laleh is a part includes reptile enthusiasts, breeders, show promoters, and vendors throughout this country and worldwide.

19.　　The reptile community is a close-knit one, making Laleh's relationships and reputation within that community a key part of his overall business. The development and maintenance of relationships with other reptile enthusiasts and breeders contribute significantly to Plaintiffs' sales and business.

20.　　Laleh maintains relations with both trade show promoters and vendors to ensure that Plaintiffs will be able to participate in reptile shows for both sales and exposure.

21.　　Because the community gathers both in physical spaces like the reptile shows and participates consistently in online forums on social media, Laleh and other like members of the reptile community are generally acquainted with one another and if applicable, each other's businesses like The Gecko King Inc.

22.　　Laleh often receives business in the form of sales, trade, and referrals from the same patrons within the reptile community. Word of mouth in this community is extremely important.

23.　　Defendant has turned to hate and fabrication in an attempt to destroy Laleh's reputation and livelihood by infiltrating Plaintiffs' professional reptile community, disparaging Laleh within that community, and thereby causing significant damage to Laleh both personally and professionally through The Gecko King Inc. Furthermore, Defendant launched this attack

just as Plaintiffs began to experience significant financial growth, potentially shattering the momentum Laleh relied upon in making The Gecko King Inc. his sole source of income. Moreover, upon information and belief, Defendant's use of hate and fabrication was designed to provide benefit to Defendant's competing gecko-breeding business.

**Defendant's Campaign of Disparagement and Defamation**

24.    Defendant has endeavored to ruin Laleh's reputation and goodwill through a multi-faceted and ongoing campaign of harassment starting shortly after the two met.

25.    In or about 2019, Defendant met Laleh at his then-workplace. She was a regular customer at the establishment where Laleh worked and consistently sought out opportunities to visit Laleh at work.

26.    Defendant showed an undue amount of interest in Laleh. Defendant began visiting Laleh's place of work at times only when Laleh was likely to be present. In addition, Defendant on repeated occasions waited at or near Laleh's workplace until Laleh finished his work, hoping to catch Laleh as he left work so that she could spend time with him. On top of that, Defendant would contact Laleh via text message, sometimes up to 50 times a day, and oftentimes without a response from Laleh.

27.    In early 2021, Defendant began her own, competing reptile-breeding business. Upon information and belief, Defendant did so with at least a dual purpose—one purpose was to compete with and damage Laleh's business. The other, upon information and belief, was to use her competing business as a means of continuing to cross paths with Laleh because Laleh was making increasingly clear that he had no interest in any further engagement or relationship with Defendant. Using the knowledge Defendant had gained from Plaintiffs about the reptile community, breeding reptiles, and advertising and selling reptiles via social media, Defendant

was successfully able to enter the reptile market as a breeder and seller. Notably, many of Defendant's sales were of reptiles she initially purchased from Plaintiffs.

28.     In December 2020, Laleh became romantically involved with another individual. Upon learning this information in December 2021, Defendant's harassment of Laleh escalated markedly. Defendant inundated Laleh with near-constant calls, text messages, and social media messages expressing her anger over Laleh's new relationship. Laleh had no choice but to eventually block Defendant from his number entirely.

29.     Upon having her attempts at contact blocked by Laleh, Defendant still attempted to connect with Laleh using blocked phone numbers, third parties, and/or aliases. Laleh continued to avoid her relentless attempts at contact.

30.     On January 14, 2022, Laleh and his then-romantic partner received a disturbing Facebook message from an individual purporting to be a relative of Defendant. The individual falsely stated that Defendant had committed suicide and invited Laleh and his then girlfriend to an upcoming funeral service.  In light of the ongoing pattern of harassment Laleh had experienced, Laleh viewed this Facebook message with suspicion. His suspicion was confirmed when he learned via a friend of Defendant's that Defendant was in fact alive. Upon information and belief, the Facebook message was another attempt by Defendant to elicit a response from Laleh and/or re-establish contact between Laleh and Defendant.

31.     The most egregious and serious act in Defendant's harassment campaign is the publication of the False Mass Email. On or about April 19, 2022, Defendant sent the False Mass Email to multiple named email accounts and unknown number of email accounts, hidden by the BCC feature, falsely claiming as follows:

> You do not know me, but my name is Leanne Miller. I never imagined I would be writing an email like this, but I feel it is my duty to warn as many people as

possible about a breeder named Richie Laleh/The Gecko King, Inc. I believe he is a child molester and he must be kept away from any event where there could be children.

I believe this because, a few weeks ago, my 9 year old daughter told me he had multiple inappropriate encounters with her. I do not know how many details I can disclose here as there is an active investigation into my daughter's story. But I do know that at least one encounter happened in a crowded event where other adults were present, including me. I am not a bad mother and I always have at least one eye on my children. However he somehow got her away from my sight and took advantage of her without anyone else knowing. I also know that there is at least one other girl around my daughter's age who has made similar accusations that are being investigated as well.

I am pained and embarrassed to be sending an email like this to total strangers. I am only doing this because I know how many children attend these shows. I cannot allow him to be around other children without at least trying to warn people about what he really is.
Please do not let him work any events where children may be present.
There is an active investigation and I am sure enough evidence will surface to make an arrest soon. But until then, Richie Laleh must be kept from any event where children are present.

32.      All of the statements concerning Plaintiff within the False Mass Email are completely fabricated and entirely false. Laleh has never molested any person, let alone any minor. None of the events or conduct claimed in the False Mass Email are true.

33.      Furthermore, upon information and belief, all of the statements were published by Defendant for the overt purpose of destroying the personal and professional reputation of Plaintiffs. Defendant included both Laleh and The Gecko King Inc. tying the fate of Plaintiffs' professional reputation and credibility within the community together.

34.      Defendant sent the False Mass Email to reptile trade show promoters and vendors working in the reptile-breeding business knowing that its contents would harm Plaintiffs' reputation and success.

35.      On April 23, 2022, just a few days after sending the False Mass Email, Defendant posted on her former Instagram account, referring to a "shocking rumor - the kind that makes

you question everything you thought you knew about someone." Upon information and belief, the "rumor" was an allusion to the false assertions in the False Mass Email and posted with the purpose of fortifying the contents of the False Mass Email.

36.     On or about April 25, 2022, Defendant sent a follow-up email (the "Follow-up Email") purporting to retract the claims made in the False Mass Email and attempting to excuse those claims as having been made in a state of intoxication and resentment as a former girlfriend of Laleh. The Follow-up Email did little, if anything, to address the damage caused by Defendant's False Mass Email in part because Defendant sent the Follow-up Email to only four people. Instead, it fell to Plaintiffs to try to mitigate the damage done by the False Mass Email with Laleh's own email sent to multiple people within the reptile community, denying the claims made in the False Mass Email. At this time, Plaintiffs are unsure how many people have seen either the False Mass Email or the Follow-up Email.

37.     Before the Follow-up Email was sent, Defendant reached out to both Laleh and his sister, purporting to offer concern for Laleh in light of the False Mass Email and assistance in unmasking the sender of the False Mass Email—even though Defendant was the sender. While Laleh elected not to engage with Defendant, Defendant also contacted Laleh's sister. In addition to offering her sympathies, Defendant provided Laleh's sister with the name of an individual Defendant claimed was the reason she herself had heard of the rumor which, upon information and belief, was a guise to hide Defendant's authorship. Laleh's sister alerted Defendant that Plaintiffs might pursue investigatory and/or legal action against the sender – while unbeknownst to Laleh's sister at the time was Defendant – to address the damage caused by the False Mass Email, at which point, upon information and belief, Defendant sent the Follow-up Email.

38.     The statements in the False Mass Email were and are materially false. Upon

information and belief, those claims were made by Defendant knowing that they were fraudulent in order to defame and harm Plaintiffs by falsely associating Laleh and his business with criminal sexual misconduct. In fact, Laleh has no former girlfriend with a nine-year old daughter. At no time during his acquaintance with Defendant did she ever mention having a nine-year old daughter. By her own admission in the Follow-up Email, Defendant has no nine-year old daughter. Laleh has never molested anyone, and certainly never molested any minor. In addition to damaging Plaintiffs' reputation and business, the False Mass Email was, upon information and belief, designed as a way to benefit Defendant's competing gecko breeding business.

39.     By publishing the False Mass Email, Defendant acted with constitutional malice because Defendant knew she was lying when she sent the False Mass Email and made the claims contained therein. Alternatively, and at a minimum, Defendant made the claims in the False Mass Email with reckless disregard as to whether the statements about Laleh were true or false. However—to be clear—they are demonstrably false.

40.     Upon information and belief, Defendant published the False Mass Email with two interrelated purposes in mind. Defendant's first purpose was damaging Plaintiffs' reputation and causing him to lose revenue. The claims in the False Mass Email bear directly on Plaintiffs' services, professional capabilities, and business practices—all key aspects of Plaintiffs' business in the tight-knit reptile-breeding community. Defendant's second purpose was to use the subsequent harm to Plaintiffs' standing in the reptile-breeding community, in combination with the knowledge Defendant obtained from Plaintiffs regarding the reptile market, to further her own competing business. Given the years or relentless harassment she has inflicted on Laleh, both purposes, upon information and belief, are rooted in Defendant's desire to re-establish and/or maintain contact with Laleh.

41.     The false claim that Laleh is a "child molester" has been, is and continues to be devastating to Plaintiffs' reputation and business. No one wants to do business with or contribute to a person accused of being a pedophile. Indeed, since the False Mass Email, Plaintiffs have seen a marked decrease in social media traffic and inquiries from potential customers. In turn, the heinous nature of the claims in Defendant's False Mass Email and resulting effects on Plaintiffs' reputation and good name have caused unquantifiable amounts of distress and harm to Laleh. Irrespective of the Follow-up Email and its attempt to retract the vicious accusations, the Follow-up Email is insufficient to address the damage to Plaintiffs as a result of the False Mass Email, given the vicious nature of the false statements in the False Mass Email and the target audience that received the false statements. While Plaintiffs continue to try to restore their hard-earned relationships with reptile enthusiasts, breeders, trade show promoters, and vendors, those relationships have been strained by Defendant's statements. In fact, two trade show organizers suspended Plaintiffs' booth privileges and temporarily blocked Plaintiffs' participation at upcoming shows as a direct result of the False Mass Email, until the matter was resolved.

42.     Upon information and belief, Defendant scripted and caused to be disseminated the claims in the False Mass Email as part of an intentional, malicious, and systematic campaign to interfere with Plaintiffs' contractual relationships with customers and business partners and to wreak havoc on Plaintiffs' business by inducing those customers and business partners to cease doing business with Plaintiffs. Wreaking havoc on Plaintiffs' business had, upon information and belief, the additional benefit of helping Defendant with her competing business.

43.     Upon information and belief, Defendant intended that the accusations against Laleh and therefore, The Gecko King Inc. serve as an opportunity to promote growth in her own gecko breeding business as a competitor to Plaintiffs. As alleged above, given that the gecko

breeding business is a niche business with a relatively small number of qualified breeders, Defendant was well aware of the impact such a rumor would have on Plaintiffs directly within the small community of gecko breeders and thereby, helped promote Defendant's own business. To that end, Defendant, when speaking to Laleh's sister after the False Mass Email was sent, offered to sell some of the reptiles from her business to Plaintiffs to "help" him.

44. In view of Defendant's repeated harassment of Laleh as alleged above, Laleh suspected that the False Mass Email was in fact sent by Defendant, hiding behind the alias "Leanne Miller." The False Mass Email is just the latest and most egregious act by Defendant in her broader campaign to harass and distress Laleh.

45. Because of the blatant falsity and outrageous nature of the claims in the False Mass Email, Laleh filed a "John Doe" Complaint on May 6, 2022, in the Superior Court of New Jersey Hudson County (the "Doe Case") to, *inter alia*, unmask the "Leanne Miller" alias.

46. As a result of discovery obtained in the Doe Case, Laleh discovered that the user behind the "Leanne Miller" email address provided an alternate contact email address using the name "drinkprettythoughts," a distinctive name used by Defendant on Instagram and TikTok for one of several of Defendant's accounts. Discovery from the Doe Case also revealed that the IP addresses from which the "Leanne Miller" email account was accessed were all geolocated to the precise Brooklyn neighborhood in which Defendant resides, upon information and belief.

47. Upon information and belief, the "Leanne Miller" alias used to send the False Mass Email is at least one email address used by Defendant, and Defendant in fact sent the False Mass Email using the alias "Leanne Miller" in an effort to avoid detection.

48. Defendant's false claims have caused Laleh mental anguish and distress and resulted in an unquantifiable amount of damage to Plaintiffs' reputation and business.

## FIRST CAUSE OF ACTION
## FALSE ADVERTISING AND PROMOTION
## IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)

49. Plaintiffs repeat, reallege, and incorporate the preceding paragraphs herein as if fully stated under this claim.

50. Defendant's publication and direct endorsement of false and misleading statements about Plaintiffs' business and services constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

51. Defendant's publication and direct endorsement of false and misleading statements about Plaintiffs' business and services, is likely to deceive a relevant portion of the market as to the nature and quality of Plaintiffs' services and/or effect the willingness of customers to engage Plaintiffs.

52. Upon information and belief, Defendant's conduct was committed willfully, knowingly, maliciously, and in conscious disregard of Plaintiffs' rights, and in an effort to promote Defendant's own competing business at the expense of Plaintiffs' business.

53. The conduct by Defendant alleged herein has caused and, unless enjoined, will continue to cause, immediate and irreparable injury to Plaintiffs' business, goodwill and reputations.

54. Because Plaintiffs' remedy at law is inadequate, Plaintiffs seek, in addition to damages, temporary, preliminary and permanent injunctive relief to protect their legitimate business interests. Plaintiffs rely on their business reputation and ability to maintain and grow their client base in a competitive market and will continue suffering irreparable harm absent injunctive relief.

55. By reason of Defendant's acts alleged herein, Plaintiffs are entitled to recover

profits, actual damages, and the costs of the action, or statutory damages under 15 U.S.C. § 1117.

56.     The foregoing acts have been, and continue to be, deliberate, willful and wanton, making this an "exceptional" case within the meaning of 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
## LIBEL *PER SE*, AND COMMERCIAL DISPARAGEMENT

57.     Plaintiffs repeat, reallege, and incorporate the preceding paragraphs herein as if fully stated under this claim.

58.     Defendant has intentionally made knowingly false statements of fact about Plaintiffs, including but not limited to false accusations of molesting a minor in the False Mass Email.

59.     Additionally, and/or alternatively, upon information and belief, Defendant has espoused and/or concurred in the charges made by others to launch an unwarranted personal attack of their own against Plaintiffs and upon Plaintiffs' honor, dignity and standing in the community.

60.     The claims in at least the False Mass Email were made maliciously and willfully and were intended to cause harm to Plaintiffs' business integrity and personal reputations.

61.     The claims in at least the False Mass Email are not only false, but defamatory in that such claims are injurious to the reputations of incongruity and injurious to the ability of Incongruity to conduct its business and serve potential customers.

62.     The claims in at least the False Mass Email were false when made and Defendant knew or should have known that they were false when made.

63.     At a minimum, the claims in at least the False Mass Email were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and

willful disregard of the reputation and rights of Plaintiffs.

64.     The claims in at least the False Mass Email were made of and concerning Plaintiffs and were so understood by those who read Defendant's publication of them inasmuch as the False Mass Email clearly identifies Plaintiff by name.

65.     Defendant has no privilege to make the false and disparaging statements and claims alleged herein.

66.     Defendant made the claims in at least the False Mass Email with actual malice, in that through the absence of any personal and professional relationship with Plaintiffs, Defendant knew that the claims in at least the False Mass Email were false. Alternatively, Defendant's statements were published with reckless disregard for the truth or falsity of same and were made to solely to injure Plaintiffs.

67.     As a result of Defendant's acts, Plaintiffs have suffered irreparable damage to their reputation and further damages to their business, in the form of lost customers and sales.

68.     As a result of the willful and malicious nature of the defamation, Plaintiffs are entitled to punitive damages.

### THIRD CAUSE OF ACTION
### <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

69.     Plaintiff Laleh repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

70.     Defendant's statements and conduct as alleged herein occurred intentionally with a desire to harm Plaintiff Laleh.

71.     The manner by which Defendant sought to harm Plaintiff Laleh, including the steps described herein via the dissemination of the False Mass Email to communicate with numerous third parties, including Plaintiff Laleh's business associates, was extreme and

outrageous. Indeed, the public statements made via email accusing Plaintiff Laleh of inappropriate sexual contact with multiple minors was extreme and outrageous.

72.     By turning this smear campaign exceedingly personal and ugly, Defendant intended to and did cause Plaintiff Laleh severe and extreme emotional distress.

73.     As a result of Defendant's past and continued wrongful acts, including, *inter alia*, besmirching Plaintiff Laleh's reputation, he has experienced extreme emotional distress.

74.     As a result of Defendant's past and continued wrongful acts, the character and reputation of Plaintiff Laleh was harmed, and he has suffered and is suffering mental anguish and personal humiliation.

75.     As a direct and proximate result of Defendant's past and continued wrongful acts, Plaintiff Laleh has been materially and substantially damaged in an amount to be proved at trial, including compensation for his time, effort and attorneys' fees.

## FOURTH CAUSE OF ACTION
## HARASSMENT

76.     Plaintiff Laleh repeats, realleges, and incorporates the preceding paragraphs herein as if fully stated under this claim.

77.     Defendant publicly and falsely accused Plaintiff Laleh of engaging in criminal activity with a minor.

78.     Those publicly-made false statements would be highly offensive to a reasonable person.

79.     These statements were made maliciously and willfully and were intended to cause harm to Plaintiff Laleh's business and personal reputation.

80.     Defendant's statements as alleged herein were false when made, and Defendant knew or should have known that the statements were false when made.

81.    Alternatively, Defendant's statements as alleged herein were made with reckless disregard for their truth or falsity or with knowledge of their falsity and with wanton and willful disregard of the reputation and rights of Plaintiff Laleh.

82.    The False Mass Email was only the most outrageous act in a broader campaign of Defendant harassing Plaintiff through incessant and unwanted attempts by Defendant to contact Plaintiff.  Defendant's harassment of Plaintiff has been ongoing for months and has steadily escalated in seriousness. In the months after the issuance of the False Mass Email, Defendant continued to contact the Plaintiff Laleh and/or his family members via blocked calls and social media, in a misguided attempt to stay relevant in the Plaintiff Laleh's life, when in actuality, the Defendant is the author of the False Mass Email. When presented with the information that Plaintiffs planned to seek legal recourse against the author, Defendant sent the Follow-up Email in an attempt avoid the instant action.

83.    Indeed, immediately before the filing of this Complaint, upon information and belief, Defendant arrived unannounced and uninvited to Laleh's home and taped an unwanted, menacing letter on his door. Defendant's pattern of harassment is continuing and threatening Laleh not just through his business but also at his home, making the relief requested of utmost urgency.

84.    Plaintiff Laleh has suffered and is suffering mental anguish, and his reputation and businesses have been harmed and continues to be harmed by Defendant's statements and, as such, Plaintiff Laleh is entitled to an award of actual, special and exemplary damages in an amount to be proved at trial, including compensation for his time, effort and attorneys' fees, as well as injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant awarding Plaintiffs:

1.        A temporary and permanent order enjoining Defendant from publishing the statements constituting libel and/or commercial disparagement identified above in relation to Plaintiffs, or any false statements similar thereto, and directing Defendant and her respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, to remove, delete, or otherwise disable such posts;

2.        A temporary and permanent order enjoining Defendant from contacting Plaintiffs and any of his known family members, business associates, or co-workers, directly or indirectly in any way whatsoever, including but not limited to, via social media, text message, mail, or email.

3.        A judgment declaring that Defendant's conduct constitutes libel, commercial disparagement and/or a violation of the Federal Lanham Act;

4.        A judgment declaring that Defendant's conduct constitutes intentional infliction of emotional distress;

5.        An award of compensatory damages according to proof at trial but in an amount not less than $1,000,000.00;

6.        An award of punitive damages, in an amount to be determined at trial; and

7.        An award of Plaintiffs' reasonable attorneys' fees, costs and disbursements in this civil action; and

8.        An award of such other and further relief to which Plaintiffs may be entitled as a matter of equity, or which the Court determines to be just and proper.

## **JURY DEMAND**

PLEASE TAKE NOTICE that the Plaintiffs demand a trial of the issues by jury.

Dated: July 8, 2022
       Brooklyn, New York

                                            LEWIS & LIN, LLC

                                            By:

                                            DAVID D. LIN (Bar No. 028462003)
                                            81 Prospect Street, Suite 8001
                                            Brooklyn, NY 11201
                                            Tel: (718) 243-9323
                                            Fax: (718) 243-9326
                                            Email: david@iLawco.com

                                            *Counsel for Plaintiff*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RICHARD LALEH and THE GECKO KING INC.

**DEFENDANTS**

MARIA AMEEN

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
LEWIS & LIN LLC                David D. Lin
77 Sands Street, 6th Floor       david@ilawco.com
Brooklyn, New York 11201       (718) 243-9323

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government
Plaintiff
- [x] 3  Federal Question
*(U.S. Government Not a Party)*
- [ ] 2  U.S. Government
Defendant
- [ ] 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [x] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §1125(a)(1)(B)

Brief description of cause:
False Advertising and Promotion

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
$1,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____    DOCKET NUMBER _____

DATE
July 8, 2022

SIGNATURE OF ATTORNEY OF RECORD
*/s/David D. Lin*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.7 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration

I, _____, counsel for_____, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

                monetary damages sought are in excess of $150,000, exclusive of interest and costs,

                the complaint seeks injunctive relief,

                the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is "related" to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)    Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?          Yes          No

2.)    If you answered "no" above:
       a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?          Yes      No

       b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?          Yes      No

       c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received:_____.

If your answer to question 2 (b) is "No", does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?_____Yes_____No_____
      *(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

          Yes                    No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

          Yes   (If yes, please explain          No

I certify the accuracy of all information provided above.

**Signature:** _____/s/ David Lin_____